Matter of Lima (2022 NY Slip Op 05319)

Matter of Lima

2022 NY Slip Op 05319

Decided on September 28, 2022

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 28, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.

2020-00318

[*1]In the Matter of Paul X. Lima, admitted as Paul Xavier Lima, a suspended attorney. Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, petitioner; Paul X. Lima, respondent. (Attorney Registration No. 2343846)

DISCIPLINARY PROCEEDING commenced by the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts pursuant to 22 NYCRR 1240.8 by the service and filing of a notice of petition and a verified petition, both dated January 8, 2020. Subsequently, the respondent served and filed a verified answer dated February 27, 2020, and the Grievance Committee served and filed a statement of disputed and undisputed facts dated July 1, 2020, which was not challenged by the respondent. By decision and order on motion of this Court dated September 16, 2020, the respondent was immediately suspended from the practice of law in the State of New York, pursuant to 22 NYCRR 1240.9(a)(2) and (5), and the matter was referred to Roger Bennet Adler, as Special Referee, to hear and report. By decision and order on motion dated January 15, 2021, Roger Bennet Adler was relieved as Special Referee and the matter was referred to the Honorable Abraham G. Gerges, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on June 20, 1990, under the name Paul Xavier Lima.

Diana Maxfield Kearse, Brooklyn, NY (Thomas Graham Amon of counsel), for petitioner.
Paul X. Lima, Bayside, NY, respondent pro se.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts served the respondent with a notice of petition and a verified petition, both dated January 8, 2020, containing 14 charges of professional misconduct. Subsequently, the respondent served and filed a verified answer dated February 27, 2020, and the Grievance Committee served and filed a statement of disputed and undisputed facts dated July 1, 2020, which was not challenged by the respondent. By decision and order on motion of this Court dated September 16, 2020, the respondent was immediately suspended from the practice of law in the State of New York, pursuant to 22 NYCRR 1240.9(a)(2) and (5), and the matter was referred to Roger Bennet Adler, as Special Referee, to hear and report. By decision and order on motion dated January 15, 2021, Roger Bennet Adler was relieved as Special Referee and the matter was referred to the Honorable Abraham G. Gerges, as Special Referee, to hear and report. The respondent filed an amended answer on April 15, 2021. Following a prehearing conference held on April 15, 2021, and [*2]a hearing conducted on July 13, 2021, the Special Referee filed a report dated October 6, 2021, in which he sustained all charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent filed an affirmation in partial opposition in which he states that he does not oppose the findings of the Special Referee, and in view of the mitigating circumstances presented, a sanction no greater than a suspension of two years with credit for the time under the interim suspension order is appropriate.
The Petition 
Charge one alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, for his own use and benefit, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: The respondent maintained an attorney escrow account at JP Morgan Chase Bank, account number ending in 8324, entitled "Paul X. Lima Attorney Trust Account IOLA" (hereinafter the escrow account). In November 2017, the respondent represented the seller in a sale of real property located in Corona. The respondent received a $50,000 down payment from the buyer which he deposited into his escrow account on November 6, 2017, and was required to maintain on deposit until the closing. Between November 6, 2017, and November 9, 2017, the respondent transferred the $50,000 down payment to his personal JP Morgan Chase Bank checking account, entitled "Paul Lima Esq.," account number ending in 8019 (hereinafter the personal checking account), which had a negative account balance at the time. The respondent then withdrew those funds from the personal checking account for his personal use. By November 10, 2017, prior to the closing, the balance in the escrow account was only $918.82, below the amount he was required to maintain on deposit.
Charge two alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, for his own use and benefit, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: In October 2017, the respondent represented the seller in a sale of real property located in the Bronx. Pursuant to an agreement at the closing, the respondent was given the sum of $26,358.53, which he deposited into the escrow account on October 23, 2017, and was required to maintain on deposit until authorized to disburse the funds at a later date. Between October 23, 2017, and October 30, 2017, the respondent transferred those funds to the personal checking account, which had a negative account balance at the time. He then withdrew those funds from the personal checking account for his personal use. By October 31, 2017, prior to any authorized distribution of those funds, the balance in the escrow account was only $918.82, below the amount he was required to maintain on deposit.
Charge three alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, for his own use and benefit, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: In 2017, the respondent represented the seller in a sale of real property located on Hillcrest Court. The respondent received a $20,000 down payment from the buyer, which he deposited into the escrow account on February 15, 2017, and which he was required to maintain on deposit until the closing. Between February 15, 2017, and February 28, 2017, the respondent transferred those funds to the personal checking account. He then withdrew those funds from the personal checking account for his personal use. By February 28, 2017, prior to the closing, the balance in the escrow account was only $2,510, below the amount he was required to maintain on deposit.
Charge four alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, for his own use and benefit, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: In 2017, the respondent represented the seller in a sale of real property located in Massapequa. The respondent received a $5,000 down payment from a buyer known as "DKGF," which he deposited into the escrow account and which he was required to maintain on deposit until the closing. Thereafter, the respondent withdrew those funds from the escrow account for his personal use. In September 2017, when the contract of sale was cancelled and before the respondent returned the down payment, the balance in the escrow account was only $10, below the amount he was required to maintain on deposit.
In December 2017, the respondent again represented the same seller in the sale of the same real property located in Massapequa. The respondent received a $10,000 down payment from a buyer known as "RLF Logistics," which he deposited into the escrow account on December 5, 2017, and was required to maintain on deposit until the closing. Throughout December 2017, the respondent transferred those funds to the personal checking account, which had a negative account [*3]balance at the time. He then withdrew those funds from the personal checking account for his personal use. By December 26, 2017, prior to the closing, the balance in the escrow account was only $500.82, below the amount he was required to maintain on deposit.
Charge five alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, for his own use and benefit, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: In November 2017, the respondent represented the seller in a sale of real property located in Elmhurst. The respondent received a $5,000 down payment from the buyer, which he deposited into the escrow account on November 27, 2017, and which he was required to maintain on deposit until the closing. By December 2, 2017, prior to the closing, the balance in the escrow account was approximately $18.81, below the amount he was required to maintain on deposit. In February 2018, at the closing, pursuant to an agreement between the parties, the buyer gave the respondent the sum of $3,500 to hold in escrow. After depositing the funds, the respondent withdrew those funds for his personal use. By April 11, 2018, before the respondent was obligated to return those funds to the buyer, the balance in the escrow account was only $10, below the amount that he was required to maintain on deposit.
Charge six alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, for his own use and benefit, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: In July 2017, the respondent represented the seller in a sale of real property located in Yonkers. The respondent received a $10,000 down payment from the buyer, which he deposited into the escrow account on July 10, 2017, and which he was required to maintain on deposit until the closing. After distributing some of those funds at the closing, as of July 31, 2017, the respondent was required to maintain approximately $5,400 in the escrow account. Between August l, 2017, and August 10, 2017, the respondent transferred the remaining funds to the personal checking account, which had a negative balance at the time. He then withdrew those funds from the personal checking account for his personal use. By August 10, 2017, the balance in the escrow account was only $10, below the amount he was required to maintain on deposit.
Charge seven alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, for his own use and benefit, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: In August 2017, the respondent represented the seller in a sale of real property located in Jackson Heights. The respondent received a $5,000 down payment from the buyer, known as "PB 100," which he deposited into the escrow account on August 1, 2017, and which he was required to maintain on deposit until the closing. Between August 1, 2017, and August 10, 2017, the respondent transferred those funds to the personal checking account, which had a negative account balance at the time. He then withdrew those funds from the personal checking account for his personal use. By August 10, 2017, prior to the closing, the balance in the escrow account was only $10, below the amount he was required to maintain on deposit.
Charge eight alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, for his own use and benefit, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: In September 2017, the respondent represented the seller in a sale of real property located in Roslyn. The respondent received a $5,000 down payment from the buyer which he deposited into the escrow account on September 29, 2017, and which he was required to maintain on deposit until the closing. Throughout October 2017, the respondent transferred those funds to the personal checking account. He then withdrew those funds from the personal checking account for his personal use. By October 20, 2017, prior to the closing, the balance in the escrow account was only $3.43, below the amount he was required to maintain on deposit.
Charge nine alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, for his own use and benefit, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: In December 2017, the respondent represented the seller in a sale of real property located in Glendale. The respondent received a $5,000 down payment check from the buyer, which he deposited into the escrow account on December 8, 2017, and which he was required to maintain on deposit until the closing. Throughout December 2017, the respondent transferred those funds to the personal checking account. He then withdrew those funds from the personal checking account for his personal use. By December 26, 2017, prior to the closing, the balance in the escrow account was only $500.82, below the amount he was required to maintain on deposit.
Charge ten alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, for his own use and benefit, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: In April 2017, the respondent represented a seller in a sale of real property located on Burchell Road. The respondent received a $5,000 down payment from the buyer, which he deposited into the escrow account on April 3, 2017, and which he was required to maintain on deposit until the closing. After distributing some of those funds at the closing, the respondent was required to maintain $2,500 in his escrow account for the broker, Canale Realty. By April 28, 2017, prior to providing those funds to Canale Realty, the balance in the escrow account was only $10, below the amount he was required to maintain on deposit.
Charge eleven alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, for his own use and benefit, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: In March 2018, the respondent settled a personal injury matter on behalf of a client for the sum of $60,000. On March 27, 2018, he deposited the settlement check into the escrow account and he was required to maintain $40,108 on deposit for his client, representing the client's share of the settlement. However, after issuing checks on unrelated matters, the balance in the escrow account on or about March 28, 2018—prior to providing his client with her share of the settlement funds—was only $31,720, below the amount he was required to maintain on deposit.
Charge twelve alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, for his own use and benefit, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: In January 2017, the respondent represented the seller in a sale of real property located in the Bronx. The respondent received a $76,000 down payment from the buyer which he deposited into the escrow account on January 5, 2017, and which he was required to maintain on deposit until the closing. Throughout January 2017, the respondent issued checks unrelated to the sale drawing against the down payment. The respondent transferred the remainder of the down payment funds to the personal checking account and then withdrew those funds for his personal use. By February 13, 2017, prior to the closing, the balance in the escrow account was only $10, below the amount he was required to maintain on deposit.
Charge thirteen alleges that the respondent issued checks from the escrow account knowing that there were insufficient funds on deposit at the time, in violation of rules 8.4(b) and (h) of the Rules of Professional Conduct, as follows: On January 30, 2018, the respondent issued three checks to various payees, check no. 1106 ($7,000), check no. 1107 ($5,004.13), and check no. 1109 ($1,599.13), from the escrow account. At that time, he knew there were insufficient funds on deposit, as the balance in the escrow account was only $20.82. As a result, all three checks were dishonored.
On February 9, 2018, the respondent issued check no. 1113 ($7,100) from the escrow account. At that time, he knew there were insufficient funds on deposit, as the balance in the escrow account was only $407.59. As a result, the check was dishonored.
On March 13, 2018, the respondent issued check no. 1114 ($20,000) from the escrow account. At that time, he knew there were insufficient funds on deposit, as the balance in the escrow account was only $7.59. As a result, the check was dishonored.
On April 6, 2018, the respondent issued check no. 1126 ($10,000) from the escrow account. At that time, he knew there were insufficient funds on deposit, as the balance in the escrow account was only $1,012. As a result, the check was dishonored.
On April 11, 2018, the respondent issued check no. 1127 ($3,500) from the escrow account. At that time, he knew there were insufficient funds on deposit, as the balance in the escrow account was only $10. As a result, the check was dishonored.
On December 3, 2018, the respondent issued check no. 1130 ($60,000) and check no. 1131 ($12,900) from the escrow account. At that time, he knew there were insufficient funds on deposit, as the balance in the escrow account was only $10. As a result, both checks were dishonored.
Charge fourteen alleges that the respondent failed to maintain required bookkeeping records for the escrow account, in violation of rule 1.15(d) of the Rules of Professional Conduct, as follows: The respondent failed to keep a ledger or similar record that accurately reflected the date and source of all funds deposited into the escrow account, the names of all persons for whom funds were held, the amount of such funds, the description and amounts, and the names of all persons to whom such funds were disbursed.
[*4]Findings and Conclusion 
In view of the respondent's admissions and the evidence adduced, we find that the Special Referee properly sustained all charges. The Grievance Committee's motion to confirm the report of the Special Referee is granted.
In determining an appropriate measure of discipline to impose, the respondent requests that this Court consider, in mitigation, evidence that the respondent's conduct occurred during a period when he experienced severe financial issues which related to the care of his wife, elderly parents, and his children; his own personal issues for which he sought mental health treatment; the respondent's admission of wrongdoing; his sincere remorse; and his lack of a disciplinary history. Notwithstanding the mitigation advanced, we have also considered that from 2017 through 2018, the respondent engaged in a continuous pattern of misappropriating client funds, totalling approximately $230,000, for his own personal use, issued ten checks knowing that he had insufficient funds in the escrow account, and failed to maintain required bookkeeping records for the escrow account. We have considered, in aggravation, that as of the date of the hearing, the respondent had not reimbursed the sum of $79,500 to his clients.
Under a totality of circumstances, we conclude that the respondent's conduct warrants disbarment.
LASALLE, P.J., DILLON, DUFFY, BARROS and CONNOLLY, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted and the charges are sustained; and it is further,
ORDERED that pursuant to Judiciary Law § 90, effective immediately, the respondent, Paul X. Lima, a suspended attorney, admitted as Paul Xavier Lima, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,
ORDERED that the respondent, Paul X. Lima, admitted as Paul Xavier Lima, shall continue to comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, effective immediately, the respondent, Paul X. Lima, admitted as Paul Xavier Lima, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Paul X. Lima, admitted as Paul Xavier Lima, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Maria T. Fasulo
Clerk of the Court